## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**ADRIAN PEACE, SR.,**                    **CASE NO.: 5:21-cv-00137-TKW-MJR**

      **Plaintiff,**

**v.**

**METRIC ENGINEERING, INC.,**
**AND THOMPSON TRUCKING, LLC,**

      **Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff, ADRIAN PEACE, SR., hereby sues Defendants, METRIC ENGINEERING, LLC., and THOMPSON TRUCKING, INC., and alleges:

## NATURE OF THE ACTION

1.      This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes and 42 U.S.C. §1981.

2.      This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, ADRIAN PEACE, SR., has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his race (black) and actual or perceived disability

or record of impairment, and he was retaliated against after reporting Defendants' unlawful employment practices.

4.    At all times pertinent hereto, Defendant, METRIC ENGINEERING, INC., ("Metric") has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been a joint "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's joint employer as it relates to these claims.

5.    At all times pertinent hereto, Defendant, THOMPSON TRUCKING, LLC., ("Thompson") has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been a joint "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's joint employer as it relates to these claims.

## CONDITIONS PRECEDENT

6.    Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Rights and/or the Equal Employment Opportunity Commission.  This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

7.    Plaintiff, a black male, began his employment with Defendant Thompson on October 27, 2018 and held the position of Debris Monitor at the time of his wrongful termination on or around January 9, 2019. Despite Plaintiff's satisfactory work performance during his employment with Defendants, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his race and actual or perceived disability, and because he reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8.    Defendant Thompson had a contract with Defendant Metric when Plaintiff was originally employed with Thompson for Thompson to provide employees to work with Metric during the Hurricane Michael clean up. Plaintiff performed his job duties at different cites as directed by Defendant Metric.

9.    Although Plaintiff was paid by Thompson, his work was controlled by employees of Metric and Metric determined how much employees of Thompson would be paid. Metric also had the direct power to fire, hire and modify the employment conditions of employees like Plaintiff.

10.    Further, after Plaintiff was employed by Thompson, his training was provided by and through Metric employees. Upon being hired, Plaintiff attended a

week long training course that was in different locations which were hosted and conducted by Metric, not Thompson, employees.

11.     The only contact and role that Thompson played in Plaintiff's employment was that Thompson:

    a.  handled weekly payroll for employees jointly working/employed with Metric and Thompson;

    b.  relayed messages from Metric to employees of Thompson as to which employees Metric needed to work each day; and

    c.  told Thompson employees the specific locations where they were to report to work each day for Metric.

12.     After Plaintiff learned where he was to report to work each by a Thompson employee, Plaintiff met with a Metric employee who then directed the employees as to which jobsite they would be working.

13.     Once Plaintiff began working each day, Metric employees, Don Day, Project Manager ("PM"), Doug Zimmer, Lead Worker Jordan (l/n/u) and Michelle Baxley, all white Metric employees, controlled every aspect of Plaintiff's work. Thompson employees had no control over the employees including Plaintiff once they arrived at the work site.  Once at the work site, Metric had absolute control over where the employees were directed to work and the work they performed.

Metric employees also supervised all of the Thompson employees once they arrived at work each day.

14.    After Plaintiff arrived on the job site each day of his employment with both Defendants, Don Day, Doug Zimmer, and/or Michelle Baxley, told him what to do each day.  Lead Worker Jordan (lnu) started working with Metric around early December 2018 and joined with Day, Zimmer and Baxley in directing Plaintiff's work and his specific work assignments daily until Plaintiff was terminated.

15.    Plaintiff suffers from a disabling mental health condition, PTSD, of which Don Day, Doug Zimmer and Michelle Baxley were aware at some point during Plaintiff's employment with Defendants.  Having a service dog is an accommodation for this disabling condition.  Plaintiff had the service dog at work with him and the dog remained in his truck during the work day.

16.    By December 2018, Plaintiff was told by both Baxley and Zimmer that he was next in line for a promotion to a Lead Worker position.  Metric employee Doug Zimmer, together with input by Michelle Baxley, was the person who was to be making the final recommendation to Don Day as to whether Plaintiff was promoted.  If he was promoted, Plaintiff understood that he would move from being paid by Thompson to be paid by Metric.

17.    Shortly after Lead Worker Jordan began working with Metric in early December 2018, there were two occasions that Plaintiff's time sheets were missing.  Plaintiff saw Jordan hide his time sheet the second time that his time sheet was missing.  Rather than confronting Jordan, Plaintiff reported this incident to Zimmer and told him that he thought this may be a racial incident because of the way that Jordan had been treating Plaintiff.  It appeared to Plaintiff at that time that Jordan was trying to prevent Plaintiff from being promoted by making him look bad for losing his time sheets, which Plaintiff had not lost.

18.    Zimmer downplayed the complaint that Plaintiff made about Jordan hiding his time sheets and Jordan's actions being racist by telling Plaintiff that he did not believe that Jordan was "like that."

19.    It was shortly after the incident and report of possible racism by Jordan in mid December, 2018, that Plaintiff felt that he was being targeted. Shortly after this incident with Jordan, Plaintiff was moved to a new crew by Don Day.

20.    On or around December 17, 2018, Plaintiff contacted his crew foreperson, Michelle Baxley, an employee of Metric, at 5:30 a.m. to touch base and see when the crew would be in, then headed to the jobsite that had been announced by Zimmer.  Plaintiff and Robert Orshall, a white debris monitor in the same position as Plaintiff, arrived at the jobsite at 5:45 a.m.  When no one was showing up where

6

Plaintiff was directed to do his work, Plaintiff called Baxley again at 6:00 a.m. to follow up.  Baxley told Plaintiff that the crew was running late and they would be there in a few minutes.

21.    Around 6:15 a.m., Baxley called Plaintiff and informed him that the crew was at a different jobsite without a debris monitor, so she had sent another monitor.  The crew, however, told Zimmer that Plaintiff never showed up. This baffled Plaintiff as he had been keeping Baxley informed of the situation.

22.    Plaintiff and Orshall then located the team.  When they arrived at the jobsite, Plaintiff noticed that a chainsaw operator was cutting trees on private property, which was not permitted under the contract. Plaintiff notified Baxley and documented it.

23.    Day, Zimmer, and Baxley thereafter arrived at the jobsite and Plaintiff discussed how he had seen a chainsaw cutter in the private woods which was not permitted.  The crew, however, denied that a chainsaw cutter was in the woods. Day, Zimmer, and Baxley sided with the white crew and placed Plaintiff on unpaid standby for approximately two weeks until January 5, 2019.

24.    The same day, on or around December 17, 2018, Orshall, the white debris monitor, got into a heated argument with crew member (f/n/u) Byrd and after a complaint was made about him for cussing at this crew member, he was also placed on standby.  However, Orhsall was permitted to have paid standby and return to

regular duty less than 24 hours later.  He was punished far less severely for a serious violation when Plaintiff was not permitted to return to work for around two or more weeks.

25.     Day and Baxley set Plaintiff up and concocted a lie that Plaintiff lost his temper in order to reprimand him.

26.     Plaintiff returned to the jobsite on January 8, 2019.  He had his dog with him at the time for his disability.  It was not unusual for other employees to have their dogs at the jobsite even without disabling conditions specifically but not limited to a Hispanic supervisor and a white female crewmember, who both brought their dogs with them to work daily.  Neither of these employees needed their dogs as an accommodation for disabling conditions.   The Hispanic supervisor even had subordinate employees walk his dog for him while they were on the clock.  Both of these employees either worked for Metric or their work was controlled by Metric just like Plaintiff's work was controlled by Metric.

27.     However, Zimmer approached Plaintiff with a message from Day that Plaintiff needed to leave because Plaintiff had his dog with him.  Zimmer then told Plaintiff that Day told him that Plaintiff was going to say that his dog was a service dog because of his PTSD.  Plaintiff objected to these comments by Zimmer and told him that was a very hurtful thing to say.  Plaintiff was immediately placed on standby by Zimmer and forced to leave the job site.

28.    The following day, January 9, 2019, Plaintiff emailed Metric's headquarters and complained about Day.  Plaintiff reported that Day was extremely rude and that monitors were being punished for doing the right thing.  He further indicated there was a group that wanted to petition for Day's removal and asked who he could speak with.  After he sent the email on January 9, 2019, a male called him within a couple of days thereafter.  During that call, Plaintiff discussed the issues that he specifically addressed in the email and others such as the chainsaw cutters in the private woods and that he believed that Mr. Day was being racist in the way that he was treating Plaintiff.  Plaintiff told this person about Orshall being put on standby with pay for only a day for cussing at a coworker but that Plaintiff had been placed on standby for more than two weeks without pay for doing nothing wrong.

29.    Due to his race, his disability and/or in retaliation for Plaintiff reporting Lead Worker Jordon and Day, he was never called back to work.  Metric employees made the decision to prevent Plaintiff from returning to work.  Although a Thompson employee told Plaintiff that he was placed on standby on January 8, 2019, this employee told Plaintiff that Metric would make the decision as to whether he was called back to work or not.  He was never called back to work.

30.    White employees were treated more favorably than Plaintiff.  Robert Orshall was treated more favorably as set forth above. Another white employee who was in a debris monitor position was consistently late for work and did not know

how or refused to learn how to perform his job duties, which was known to Day, Zimmer and Baxley, was never fired or disciplined. A white female and Hispanic male with dogs were also permitted to have their dogs at work without reprimand or repercussions.

31.    Nondisabled employees were also treated more favorably with respect to being allowed to have their dogs at work as referenced in paragraph 26 above.

32.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**RACE DISCRIMINATION AGAINST THOMPSON**

33.    Paragraphs 1 through 32 are realleged and incorporated herein by reference.

34.    This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes and 42 U.S.C. §1981.

35.    Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendants who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

36.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making

10

decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action

at all to prevent the abuses to Plaintiff.   Furthermore, Defendant knowingly

condoned and ratified the differential treatment of Plaintiff as more fully set forth

above because it allowed the differential treatment and participated in same.

37.    Defendant's known allowance and ratification of these actions and

inactions actions created, perpetuated and facilitated an abusive and offensive work

environment within the meaning of the statutes referenced above.

38.    In essence, the actions of agents of Defendant, which were each

condoned and ratified by Defendant, were of a race-based nature and in violation

of the laws set forth herein.

39.    The discrimination complained of herein affected a term, condition, or

privilege of Plaintiff's continued employment with Defendant.  The events set forth

herein lead, at least in part, to Plaintiff's termination.

40.    Defendant's conduct and omissions constitutes intentional

discrimination and unlawful employment practices based upon race.

41.    As a direct and proximate result of Defendant's conduct described

above, Plaintiff has suffered emotional distress, mental pain and suffering, past and

future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of

enjoyment of life and other non-pecuniary losses, along with lost back and front

pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## COUNT II
## DISABILITY DISCRIMINATION AGAINST THOMPSON

42.    Paragraphs 1 through 32 are realleged and incorporated herein by reference.

43.    This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

44.    Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability.  During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/ perceived-as-disabled employees.

45.    Defendant is liable for the differential treatment and its refusal to accommodate   Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

12

46.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

47.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

48.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment.

49.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT III
## RETALIATION AGAINST THOMPSON

50.     Paragraphs 1 through 32 are realleged and incorporated herein by reference.

51.    Defendant is an employer as that term is used under the applicable statutes referenced above.

52.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes, and 42 U.S.C. §1981.

53.    The foregoing unlawful actions by Defendant were purposeful.

54.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

55.    Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

56.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

14

**COUNT IV**
**RACE DISCRIMINATION AGAINST METRIC**

57.     Paragraphs 1 through 32 are realleged and incorporated herein by reference.

58.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes and 42 U.S.C. §1981.

59.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendants who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

60.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

61.     Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

15

62.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

63.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

64.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race.

65.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## COUNT V
## DISABILITY DISCRIMINATION AGAINST METRIC

66.     Paragraphs 1 through 32 are realleged and incorporated herein by reference.

67.     This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

16

68.    Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability.  During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

69.    Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

70.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

71.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

72.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment.

73.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT VI
## RETALIATION AGAINST METRIC

74.    Paragraphs 1 through 32 are realleged and incorporated herein by reference.

75.    Defendant is an employer as that term is used under the applicable statutes referenced above.

76.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes, and 42 U.S.C. §1981.

77.    The foregoing unlawful actions by Defendant were purposeful.

78.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

18

79.    Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

80.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent.  Plaintiff is entitled to punitive damages and to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendants and for Plaintiff awarding all legally-available general and compensatory damages and

economic loss to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)    enter judgment against Defendants and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees, costs and punitive damages;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

20

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and accurate copy of the foregoing has been furnished to all counsel of record by CM/ECF this 27th day of July, 2021.


/s/ Marie A. Mattox
Marie A. Mattox